| | |
|---|---|
| STATEK CORP.,<br>      Plaintiff,<br><br>      v.<br><br>COUDERT BROS. LLP,<br>      Defendant. | No. 3:07-cv-00456 (SRU) |

## RULING ON MOTION TO DISMISS FOR LACK OF PERSONAL JURISDICTION

Plaintiff Statek Corp. ("Statek")—a California corporation with principal place of business in Orange, California—sued its erstwhile law firm, Coudert Bros. LLP ("Coudert")—a New York limited liability partnership—for malpractice under English law. Statek's claim arises out of Coudert's alleged failure to transfer certain files from Coudert's London office to Statek in 1996. Coudert has moved to dismiss for lack of personal jurisdiction. Because jurisdiction over Coudert is not authorized by Connecticut's long-arm statute and would not comport with the requirements of due process, I grant Coudert's motion to dismiss.

## I.        Standard of Review

For a federal court to exercise personal jurisdiction over a defendant, "three requirements must be met." *Waldman v. Palestine Liberation Org.*, 835 F.3d 317, 327 (2d Cir. 2016). First, "the plaintiff's service of process upon the defendant must have been procedurally proper." *Id.* Second, "there must be a statutory basis for personal jurisdiction." *Id.* And third, "the exercise of personal jurisdiction must comport with constitutional due process principles." *Id.* The due process test, in turn, has two components: the "minimum contacts" element "requires that the court determine whether a defendant has sufficient minimum contacts with the forum to justify

the court's exercise of personal jurisdiction over the defendant." *Id.* (citing *Daimler AG v. Bauman*, 571 U.S. __, 134 S. Ct. 746, 754 (2014)), and the "reasonableness" element "requires the court to determine whether the assertion of personal jurisdiction over the defendant comports with 'traditional notions of fair play and substantial justice' under the circumstances of the particular case." *Id.* (quoting *Daimler*, 134 S. Ct. at 754).

Because Federal Rule of Civil Procedure 4(k) provides for "personal jurisdiction over a defendant . . . who is subject to the jurisdiction of a court of general jurisdiction in the state where the district court is located," personal jurisdiction typically is "determined in accordance with the law of the state where the court sits." *Arrowsmith v. United Press Int'l*, 320 F.2d 219, 223 (2d Cir. 1963) (en banc). Hence, the district court "look[s] first to the long-arm statute of the forum state." *Friedman v. Bloomberg LP*, 871 F.3d 185, 191 (2d Cir. 2017). In Connecticut, jurisdiction over foreign limited liability partnerships is authorized by Conn. Gen. Stat. § 52-59b(a), *Friedman v. Bloomberg LP*, 180 F. Supp. 3d 137, 144 n.3 (D. Conn. 2016), *aff'd in part, rev'd in part on other grounds*, 871 F.3d 185, which provides in relevant part:

> [A] court may exercise personal jurisdiction over any nonresident individual, foreign partnership or foreign voluntary association, . . . who in person or through an agent:
>
> (1) Transacts any business within the state;
>
> (2) commits a tortious act within the state . . . ; [or]
>
> (3) commits a tortious act outside the state causing injury to person or property within the state . . . , if such person or agent
>
>> (A) regularly does or solicits business, or engages in any other persistent course of conduct, or derives substantial revenue from goods used or consumed or services rendered, in the state, or
>>
>> (B) expects or should reasonably expect the act to have consequences in the state and derives substantial revenue from interstate or international commerce.

"[T]he plaintiff bears the burden of showing that the court has jurisdiction over the defendant." *Metro. Life Ins. Co. v. Robertson-Ceco Corp.*, 84 F.3d 560, 566 (2d Cir. 1996). "[W]hen a motion to dismiss . . . is decided on the basis of affidavits and other written materials," the plaintiff may carry its burden "by pleading in good faith . . . legally sufficient allegations of jurisdiction, i.e., by making a 'prima facie showing' of jurisdiction." *MacDermid, Inc. v. Deiter*, 702 F.3d 725, 727 (2d Cir. 2012); *Whitaker v. Am. Telecasting*, 261 F.3d 196, 208 (2d Cir. 2001). In assessing whether such a showing has been made, the complaint's factual allegations are "assumed to be true" and "construed in the light most favorable to the plaintiff." *Deiter*, 702 F.3d at 728; *Whitaker*, 261 F.3d at 208. The court need "not draw argumentative inferences in the plaintiff's favor," however, nor is it "required to accept as true a legal conclusion couched as a factual allegation." *Licci ex rel. Licci v. Leb. Can. Bank*, 673 F.3d 50, 59 (2d Cir. 2012). At the pleading stage, the plaintiff must plausibly allege "facts that, if credited by the ultimate trier of fact, would suffice to establish jurisdiction over the defendant." *Id.*

## II. Background

The procedural background to this case is quite complicated (aptly deemed "tortured" by Statek). *See* Mem. Opp'n Mot. Dismiss, Doc. No. 90, at 8 ("Mem. Opp'n"). On October 28, 2005, Statek and its parent company, Technicorp International II ("TCI II"), filed suit in Connecticut Superior Court against Coudert, Coudert partner Steven Beharrell, and others.[1] *See* Compl., Doc. No. 1-2, at 3, *Statek Corp. v. Coudert Bros. LLP*, No. 3:05-cv-01889 (JBA)

---

[1] Statek also initially named as defendants Coudert partner Dean Poster and several present or former members of Coudert's Executive Board. Those defendants were later dismissed.

In addition, the complaint's caption identified Sandra Spillane as a defendant, but she was not named in the summons—which, in Connecticut, determines the parties properly named in a lawsuit, *see* Conn. Gen. Stat. § 52-45a; *Hillman v. Town of Greenwich*, 217 Conn. 520, 526 (1991)—and no claims were raised against her in the body of the complaint.

("*Statek I*"). Statek alleged the defendants had aided a global money laundering, fraud, and tax evasion scheme perpetrated by Statek's former directors, Hans Frederick Johnston and Sandra Spillane.[2] *See id.* Johnston and Spillane wrongfully diverted over $30 million from Statek and TCI II and concealed it around the world. *See* Am. Compl., Doc. No. 65, at 5. Beharrell, based in Coudert's London office, served as Statek's outside counsel during the period of the conspiracy.

In 1996, after Johnston and Spillane had been removed, Statek's new directors "asked Coudert to provide information and a complete copy of the files arising out of and relating to the services Coudert had rendered." *Id.* Coudert sent some of its files to Statek but withheld (and denied the existence of) others. *See id.* The missing files were subsequently discovered in 2004, after Coudert and Beharrell were subpoenaed by a Bankruptcy Trustee appointed in connection with Johnston's bankruptcy proceedings in England.[3] *See id.* at 7–9. Statek alleges that Coudert's wrongful concealment of the files "breached . . . its professional and fiduciary duties to its client Statek" and "hindered, delayed, and frustrated [Statek] in its ability to discover and recover assets that Johnston and Spillane had misappropriated." *Id.* at 11.

A. The first removal and remand

On December 12, 2005,[4] twenty days after return date on the summons, Beharrell removed the case to this court pursuant to 28 U.S.C. § 1441. Beharrell predicated jurisdiction on diversity of citizenship, arguing that the defendants, Coudert (a New York limited liability partnership) and Beharrell (an English subject resident in England), were completely diverse

---

[2] Johnston and Spillane were removed as directors in 1996. Am. Compl., Doc. No. 65, at 3.

[3] The Bankruptcy Trustee sent the files and a transcript of his interview with Beharrell to Statek. *See* Am. Compl., Doc. No. 65, at 10.

[4] Statek incorrectly identifies the date of removal as December 22, 2005. *See* Mem. Opp'n, Doc. No. 90, at 8. The docket, however, clearly states December 12, 2005.

from the plaintiffs, Statek (a California corporation with principal place of business in Connecticut) and TCI II (a Delaware corporation). The amount in controversy also exceeded $75,000. *See* Notice of Removal, Doc. No. 1, *Statek I*.

Statek moved to remand on December 23, 2005, pointing out that the citizenship of Coudert—a limited liability partnership—was "based upon the citizenship of the individual partners." *See Conntech Dev. Co. v. Univ. of Conn. Educ. Props.*, 102 F.3d 677, 681 (2d Cir. 1996). Because some of Coudert's partners resided in California, Coudert was (like Statek) a citizen of California. Therefore, the parties were not completely diverse, and jurisdiction was lacking under 28 U.S.C. § 1332. *See* Mot. Remand, Doc. No. 8, *Statek I*; *cf. Strawbridge v. Curtiss*, 7 U.S. (3 Cranch) 267 (1806).

Beharrell consented to remand on January 20, 2006. Doc. No. 18, *Statek I*. On January 25, 2006, Judge Arterton granted the motion to remand on consent. Doc. No. 19, *Statek I*. The case was remanded to Connecticut Superior Court on February 6, 2006.

B. The first removal and remand

Back in state court, Coudert and Beharrell moved to dismiss on grounds of lack of personal jurisdiction and forum non conveniens. *See* Notice of Removal, Doc. No. 1, at 2. The Superior Court directed the parties to conduct limited jurisdictional discovery in order to establish whether Connecticut was a proper forum. *See id.*

On September 22, 2006, before the state court ruled on the motions to dismiss, Coudert filed a Chapter 11 bankruptcy petition in the Bankruptcy Court for the Southern District of New York (the "Bankruptcy Court"), which triggered an automatic stay of Statek's lawsuit in Connecticut. *See* 11 U.S.C. § 362. Statek filed a proof of claim in Coudert's bankruptcy case, in which it sought the same relief as it did in the state court action. *See* Notice of Removal, Doc.

No. 1, at 2. On March 23, 2007, Coudert removed the state court action to this court pursuant to the bankruptcy removal statute, 28 U.S.C. § 1452. *See id.*

After the second removal, the Bankruptcy Court granted relief from the automatic stay in the bankruptcy proceedings "to allow the parties to proceed to a final determination/resolution of the pending Motions to Dismiss" in this court. *See* Mem. Opp'n, Doc. No. 90, at 9. I heard argument on the motions to dismiss on February 21, 2008. *See* Minute Entry, Doc. No. 40. At the close of the hearing, I granted the motions to dismiss on the basis of forum non conveniens, without prejudice to Statek refiling in another forum within 45 days. *See* Mot. Hr'g Tr. (Feb. 21, 2008), Ex. D to Mot. Dismiss, Doc. No. 86-5, at 17.

Although I granted the motions to dismiss solely on the basis of forum non conveniens, I made a number of comments during the hearing to indicate that I doubted that this court had "personal jurisdiction over either the firm," Coudert, or the "individual partner," Beharrell. *See id.* at 6. I noted that there was "a fairly strong showing that the matter r[ose] out of activities that occurred principally abroad," and that it was "not apparent . . . why Connecticut ha[d] much, if any, connection to th[e] dispute." *Id.* The alleged misconduct by Coudert and Beharrell "occurred almost exclusively, if not exclusively[,] in England," I observed, *id.* at 8, and "Connecticut ha[d] very little connection to the claims raised in the . . . complaint." *Id.* at 13. Even though Connecticut "obviously ha[d] a greater connection to the underlying fraud" committed by Johnston and Spillane, "[t]he parties, witnesses[,] and center of the activities" in the present case were located in "England[,] and that would appear to be a natural place for this claim to have been brought." *Id.* at 13, 15. As a result, I concluded that "[t]he defendants' amenability to suit here [was] called into question." *Id.* at 15.

In part because of the "significant issues regarding personal jurisdiction of the defendants . . . in Connecticut," I determined that Connecticut was an inconvenient forum and granted the motions to dismiss "without prejudice to refiling in any forum within the next 45 days." *Id.* at 14, 17. "[I]f no refiling [were] made or if the case [were] not brought to the Bankruptcy Court for resolution within the next 45 days," I stated, "then the dismissal would be with prejudice." *Id.* at 17. I denied as moot the Coudert's and Beharrell's motions to dismiss on grounds of lack of personal jurisdiction. *Id.* at 17–18. Five days later, on February 26, 2008, the Clerk entered judgment in favor of the defendants and closed the case. *See* Doc. No. 41.

Statek quickly moved to modify the dismissal order to ensure that "the statute of limitations [did not] prevent [it] from litigating [its] claims in another forum." *See* Ruling & Order, Doc. No. 49, at 1. Because "it was not my intention, in dismissing the case, to prejudice Statek with respect to the statute of limitations," I granted Statek's motion, and modified the order of dismissal to add that:

> The dismissal is also contingent upon the defendants: (1) waiving any statute-of-limitations defense based upon the running of the statute of limitations during the period from the commencement of the original case in Connecticut to the date on which the plaintiffs re-file the case in the alternate forum; and (2) stipulating to relief from the automatic stay in the Coudert Bankruptcy to allow the plaintiffs to re-file the case in accordance with this order. Should the defendants fail to waive those defenses in writing within the next 15 days, judgment will not enter in this case.

*Id.* at 2.

Coudert filed a response on March 20, 2008, in which it stated that it "w[ould] not agree, for purposes of the statute of limitations, to treat the commencement of a subsequently filed action as though such action was commenced on the date Plaintiffs commenced this action in the Connecticut Superior Court," and would "not stipulate to relief from the automatic stay in its bankruptcy case." Resp., Doc. No. 53, at 1. Coudert instead asked that I "enter judgment of

dismissal on the grounds of *forum non-conveniens* or . . . based on the lack of personal jurisdiction over Coudert." *Id.* at 2. Because Coudert would not agree to the conditions for dismissal, I directed the Clerk to reopen the case. *See* Conf. Mem. & Order, Doc. No. 59. Beharrell did agree to the conditions, and I dismissed the claims against him "without prejudice to Statek's refiling those claims in London, England." Order, Doc. No. 64, at 2.

Statek moved the Bankruptcy Court for supplemental relief from the stay so that Statek could amend its complaint against Coudert. *See* Status Rep., Doc. No. 68, at 2. The Bankruptcy Court granted the requested relief solely for the purpose of amending Statek's complaint. *See id.* Statek then filed an Amended Complaint against Coudert in this court on August 29, 2008, alleging that Coudert had breached professional and fiduciary duties to Statek. *See* Am. Compl., Doc. No. 65, at 11. The Amended Complaint does not identify the jurisdiction under whose laws the claims arise, but Coudert asserts—and Statek appears not to contest—that the claims arise under English law. *See* Mem. Supp. Mot. Dismiss, Doc. No. 86-25, at 8 ("Mem. Supp.").

Besides the filing of the Amended Complaint—which was incorporated into Statek's proof of claim in the Bankruptcy Court—no other proceedings occurred in this court as a result of the automatic stay in bankruptcy. *See* Status Rep., Doc. No. 76, at 4. Due to that inactivity, on August 31, 2009, I ordered the case administratively closed "without prejudice to its pursuit in the United States Bankruptcy Court and without prejudice to re-opening of th[e] case upon motion." Order, Doc. No. 77, at 1.

### C. The bankruptcy proceedings

For nearly a decade, Statek's case meandered through bankruptcy court proceedings. The primary issue during that time was which jurisdiction's choice-of-law rules governed Statek's claim. Coudert argued that New York's choice-of-law rules applied under *In re Gaston & Snow*,

243 F.3d 599 (2d Cir. 2001), which held that "bankruptcy courts confronting state law claims that do not implicate federal policy concerns should apply the choice of law rules of the forum state." *Id.* at 601–02 (citing *Klaxon Co. v. Stentor Electric Manufacturing Co.*, 313 U.S. 487 (1941)). If New York's choice-of-law rules applied, Coudert asserted, then Statek's claim was barred under the applicable statute of limitations.

Statek originally contended that the Bankruptcy Court should apply federal choice-of-law rules. *See In re Coudert Bros. LLP*, 2009 WL 2928911 (Bankr. S.D.N.Y. Sept. 8, 2009) ("*Coudert I*"), *aff'd*, 2010 WL 2382397, at *2 (S.D.N.Y. June 14, 2010) ("*Coudert II*"), *rev'd in part, vacated in part, and remanded sub nom. Statek Corp. v. Dev. Plan Specialists (In re Coudert Bros. LLP)*, 673 F.3d 180 (2d Cir. 2012) ("*Coudert III*"). After the Bankruptcy Court rejected that position, Statek argued for the first time on reconsideration that Connecticut's choice of law rules applied under *Van Dusen v. Barrack*, 376 U.S. 612 (1964), because "Connecticut was the transferor forum to the Bankruptcy Court for the Southern District of New York." *Coudert II*, 2010 WL 2382397, at *2; *see Van Dusen*, 376 U.S. at 642 (when a civil action is transferred "for the convenience of parties and witnesses," 28 U.S.C. § 1404(a), "the transferee district court must . . . apply the laws of the State of the transferor district court"). If Connecticut's choice-of-law rules controlled, Statek argued, then the claim was not time-barred.

The choice-of-law dispute resulted in nine years of litigation and two appeals to the Second Circuit; it has now led the parties back to this court. The Bankruptcy Court initially declined Statek's invitation to apply Connecticut's choice-of-law rules, reasoning that Statek's Connecticut lawsuit "was not subsequently transferred" to the Bankruptcy Court, but rather was dismissed and refiled as a proof of claim. *Coudert I*, 2009 WL 2928911, at *3. On appeal, the District Court for the Southern District of New York affirmed, *Coudert II*, 2010 WL 2382397,

but the Second Circuit reversed in part, vacated in part, and remanded. *Coudert III*, 673 F.3d at

182–83.  The Second Circuit reasoned that "the practical effect of filing a proof of claim in the

bankruptcy court was to transfer the case from Connecticut federal court to New York federal

court." *Id.* at 182. Statek "did not choose to litigate in New York," the Court noted, but rather

"exercised its venue privilege in favor of Connecticut." *Id.* at 190. "[T]o allow the defendant

Coudert to use a device of federal law (the bankruptcy code) to choose the forum and

accompanying choice of law" would not only "be fundamentally unfair" but also would conflict

with the Supreme Court's decision in *Klaxon*, 313 U.S. 487, which aimed to "ensure[] that a

plaintiff's choice of forum within a given state w[ould] not be influenced by choice of law

considerations." *Coudert III*, 673 F.3d at 189, 190–91. Therefore, the Second Circuit held that

the Bankruptcy Court should "apply the choice of law rules of Connecticut," the state "where

[Statek's] underlying prepetition claim was filed." *Id.* at 182–83.

On remand, the Bankruptcy Court adhered to its decision to disallow Statek's claim. The

Bankruptcy Court reasoned that "Statek's reconsideration motion was the first time Statek

contended that Connecticut's choice of law rules should apply," and that "well established

precedent strictly constru[ed] reconsideration motions to prohibit a litigant from raising new

legal theories that it could have raised but did not until after it lost on its original theories." *In re

Coudert Bros. LLP*, 2013 WL 4478824, at *1–*2 (Bankr. S.D.N.Y. Aug. 19, 2013) ("*Coudert

IV*"). The district court affirmed, but the Second Circuit again reversed. *Statek Corp. v. Dev.

Specialists (In re Coudert Bros. LLP)*, 809 F.3d 94, 98 (2d Cir. 2015) ("*Coudert V*"). "In relying

on a prior alternative holding," the Second Circuit held, "the bankruptcy court failed to effectuate

*Coudert* [*III*]'s mandate." *Id.* at 100. Because the Second Circuit was "fully aware of the

bankruptcy court's alternative holding" and "did not" adopt it, the Court concluded that the

Bankruptcy Court's "'new argument' holding . . . was implicitly foreclosed by . . . *Coudert [III]*." *Id.* at 101. The Second Circuit reversed and remanded "with instructions to: (1) reverse [the Bankruptcy Court's] orders denying reconsideration, (2) vacate the Claim Disallowance Order, (3) reinstate Statek's claim, and (4) permit further proceedings." *Id.* at 102–03.

### D. The reopened proceedings

After the second remand, the Bankruptcy Court lifted the Bankruptcy Plan Injunction "to the extent necessary to allow [the parties] to proceed to a final determination/resolution" of this action, "and the liquidation of Statek's Claim therein." *See* Order (June 1, 2017), Ex. I to Cohen Decl., Doc. No. 90-1 at 139, 142–43. Statek then moved to reopen this case on June 12, 2017. *See* Doc. No. 78. I granted Statek's motion on June 15, 2017. Doc. No. 79.

## III. Discussion

The case has belatedly returned to this court because the parties' choice-of-law dispute appears to turn on whether Coudert is subject to personal jurisdiction in Connecticut, a matter that I declined to decide nine years ago. Under *Van Dusen*, "when a case is transferred for convenience under 28 U.S.C. § 1404(a), the law of the transferor state is to be applied so long as the transferor state could properly have exercised jurisdiction." *Gerena v. Korb*, 617 F.3d 197, 204 (2d Cir. 2010) (citing *Van Dusen*, 376 U.S. at 635–39). Conversely, "[i]f a district court receives a case pursuant to a transfer under 28 U.S.C. § 1406(a), for improper venue, or 28 U.S.C. § 1631, for want of jurisdiction, it logically applies the law of the state in which it sits, since the original venue, with its governing laws, was never a proper option."[5] *Id.* (citing *Levy v.*

---

[5] I dismissed Statek's case on the basis of forum non conveniens—a section 1404(a) ground, *see Spar, Inc. v. Info. Resources*, 956 F.2d 392, 393 (2d Cir. 1992)—not lack of jurisdiction. But "the district court's characterization of the transfer is not controlling." *Trierweiler v. Croxton & Trench Holding Corp.*, 90 F.3d 1523, 1532 n.4 (10th Cir. 1996). Because "[a] forum lacking

*Pyramid Co. of Ithaca*, 871 F.2d 9, 10 (2d Cir. 1989)); *see SongByrd, Inc. v. Estate of Grossman*, 206 F.3d 172, 181 (2d Cir. 2000) (Newman, J.) ("[I]n a transferred action the law of the transferor jurisdiction applies only if the transferor court has personal jurisdiction.") (internal citation omitted). Just as a party cannot transfer a properly filed civil action to a court that lacks personal jurisdiction, *see Hoffman v. Blaski*, 363 U.S. 335, 343 (1960), a plaintiff cannot file suit in a court without personal jurisdiction over the defendant and then use "the 'accident' of federal diversity jurisdiction . . . to achieve a result in federal court which could not have been achieved in the courts of the State where the action was filed." *See Van Dusen*, 376 U.S. at 638. Were it otherwise, "[p]laintiffs would . . . be encouraged to file their actions in the federal district court where the state law was the most advantageous, regardless of whether that district court was a proper forum." *Martin v. Stokes*, 623 F.2d 469, 472 (6th Cir. 1980); *see also, e.g.*, *Trierweiler v. Croxton & Trench Holding Corp.*, 90 F.3d 1523, 1532 (10th Cir. 1996) (applying law of transferee jurisdiction in such cases "sensibly discourages forum-shopping" by "prevent[ing] a party from filing in a district that lacks jurisdiction to hear his or her case in order to receive the benefit of that forum's law"); *Stephens v. Norwalk Hosp.*, 162 F. Supp. 2d 36, 41 (D. Conn. 2001) ("[A]pplication of the law of the original forum state where the forum state lacked personal jurisdiction clearly would create impermissible forum-shopping incentives for plaintiffs, who could file suit in *any* state whose laws [they] consider[ed] favorable.").

---

personal jurisdiction will often be inconvenient as well," *Roofing & Sheet Metal Servs. v. La Quinta Motor Inns*, 689 F.2d 982, 992 (11th Cir. 1982), courts apply the law of the transferee jurisdiction "even when the case was transferred under 28 U.S.C. § 1404(a)—purportedly for convenience— . . . so long as the transfer did in fact cure a jurisdictional defect." *Trierweiler*, 90 F.3d at 1532; *cf. Gerena v. Korb*, 617 F.3d 197, 204–05 (2d Cir. 2010) ("Judge Sand appears to have granted [the defendant]'s motion to transfer the case to Connecticut under 28 U.S.C. § 1404(a), for convenience, . . . without ever making a finding regarding personal jurisdiction. . . . [I]t must be determined whether personal jurisdiction over [the defendant] existed in New York, such that New York choice of law should have governed the claims against him.").

Coudert has moved to dismiss for lack of personal jurisdiction, asserting that jurisdiction over it—"an out-of-state defendant accused of out-of-state wrongdoing against an out-of-state plaintiff"—is neither authorized by Connecticut's long-arm statute nor permitted by the United States Constitution. Mem. Supp., Doc. No. 86-25, at 8. Statek responds that "Coudert is subject to personal jurisdiction in Connecticut because it transacted business within Connecticut by rendering legal advice to Statek in Connecticut, and because its tortious conduct caused injury to Statek in Connecticut." Mem. Opp'n, Doc. No. 90, at 31. Statek also contends that Coudert either "waived any personal jurisdiction defense . . . by failing to make a timely motion to dismiss the state court case," or else "submitted to this Court's jurisdiction" by "abandoning its personal jurisdiction defense and litigating this case on the merits since 2008." *Id.* at 20. Coudert denies that it forfeited its objection to personal jurisdiction, arguing that its motion was timely filed and that it was not required to "assert[] this Court's lack of personal jurisdiction" in the bankruptcy proceedings because "the New York bankruptcy court indisputably has personal jurisdiction." Reply Mem. Supp. Mot. Dismiss, Doc. No. 95, at 10 ("Reply Mem.").

After considering the tortuous history of the case, I hold that Coudert did not forfeit its personal jurisdiction defense. Furthermore, I conclude that this court cannot fairly exercise jurisdiction in Connecticut over Coudert (a long-since-dissolved New York law firm) on the basis of alleged malpractice under English law with respect to a client in California. Therefore, I grant Coudert's motion to dismiss for lack of personal jurisdiction.

A. Did the Second Circuit already resolve the jurisdictional question?

As an initial matter, Statek suggests that the Second Circuit implicitly decided that Coudert was subject to personal jurisdiction in Connecticut (or had forfeited its personal jurisdiction defense) in *Coudert III*, because the Court directed the lower courts to "apply

Connecticut's choice of law rules" on remand, 673 F.3d at 191, and denied a petition for rehearing in which Coudert reiterated its objection to personal jurisdiction. *See* Mem. Opp'n, Doc. No. 90, at 23. Statek's argument is plainly meritless. First, "[a] Circuit's denial of a petition for rehearing has no precedential value and is not a ruling on the merits of any issue between the parties." *Marshak v. Reed*, 229 F. Supp. 2d 179, 184 (E.D.N.Y. 2002); *cf. Speed Prods. Co. v. Tinnerman Prods.*, 222 F.2d 61, 65 (2d Cir. 1955) ("summary denial of . . . petition for rehearing" did not "indicate[] appellate affirmance" on the merits).

Second, as the Bankruptcy Court observed when presented with the same argument, Statek's position "requires that [the Second Circuit] had decided on the merits that the Connecticut court had *in personam* jurisdiction," and the Second Circuit "could [not] have done that because there was no record . . . and [the issue] was still in front of the Connecticut court." Bankr. Hr'g Tr. (Bankr. S.D.N.Y. Oct. 22, 2012), Doc. No. 95-6, at 8; *see, e.g.*, *Gerena v. Korb*, 617 F.3d 197, 204–05 (2d Cir. 2010) ("[W]hether personal jurisdiction . . . existed in New York . . . is not a determination [the Second Circuit is] equipped to make in the first instance."); *Penguin Grp. (USA) v. Am. Buddha*, 609 F.3d 30, 41 (2d Cir. 2010) ("[T]he proper course would be to remand to the district court to consider the remaining [ ] factors for personal jurisdiction . . . . Inasmuch as these issues likely involve additional questions of fact, they would best be decided by the district court, if necessary, in the first instance."); *Mario Valente Collezioni v. Confezioni Semeraro Paolo*, 264 F.3d 32, 38 (2d Cir. 2001) ("It is not clear from the record before us whether [the defendants] purposefully availed themselves of the privilege of doing business in New York. . . . [T]he district court is the proper forum for such an inquiry in the first instance."). Nothing in the Second Circuit's decision (much less in its denial of the petition for rehearing)

"necessarily implied" that the Court had resolved a difficult jurisdictional question that was never properly presented to it. *Cf. Coudert V*, 809 F.3d at 99.

*Coudert III* expressly "[e]xtend[ed] the well-established rule of *Van Dusen v. Barrack*," *see* 673 F.3d at 182, and "the *Van Dusen* rule 'applies only if the action could have been maintained in the original forum.'" *Levy v. Pyramid Co. of Ithaca*, 687 F. Supp. 48, 52 (N.D.N.Y. 1988) (quoting *Van Dusen*, 376 U.S. at 635)), *aff'd*, 871 F.2d 9; *see Gerena*, 617 F.3d at 204 (*Van Dusen* only requires the district court to apply "the law of the transferor state . . . so long as the transferor state could properly have exercised jurisdiction"). That is, *Coudert III* assumed (without deciding) that the jurisdictional prerequisite of the *Van Dusen* rule—"proper venue" in the transferor court, *see* 376 U.S. at 634—was satisfied in Statek's case. Having "dealt with all issues then before it on the record as it then stood," the Second Circuit left the question of personal jurisdiction to be "developed on remand." *See Speed Prods. Co.*, 222 F.2d at 65.

I now proceed to address the jurisdictional issue left open by *Coudert III*.

B. Did Coudert forfeit its personal jurisdiction defense?

Statek's stronger argument is that Coudert forfeited its personal jurisdiction defense by failing to timely raise it or by implicitly submitting to the jurisdiction of this court.[6] "Unlike subject matter jurisdiction, 'the requirement of personal jurisdiction represents first of all an individual right, and therefore it can, like other such rights, be waived.'" *Brown v. Lockheed Martin Corp.*, 814 F.3d 619, 625 (2d Cir. 2016) (quoting *Ins. Corp. of Ir. v. Compagnie des*

---

[6] Statek refers to Coudert as having "*waived* its personal jurisdiction defense," *e.g.*, Mem. Opp'n, Doc. No. 90, at 6 (emphasis added), but "the issue is more properly considered one of forfeiture than of waiver." *See Hamilton v. Atlas Turner*, 197 F.3d 58, 61 (2d Cir. 1999) (Newman, J.). "Waiver" refers to "a litigant's intentional relinquishment of a known right." *Id.* "Forfeiture," by contrast, describes a situation "[w]here a litigant's action or inaction is deemed to incur the consequence of loss of a right." *Id.*

*Bauxites de Guinee*, 456 U.S. 694, 703 (1982) ("*Bauxites*")) (internal brackets omitted). Whether personal jurisdiction has been waived or forfeited "is a matter of federal procedural law" to be decided within the district court's discretion. *Hamilton v. Atlas Turner*, 197 F.3d 58, 60–61 (2d Cir. 1999) (Newman, J.). The court must "consider all of the relevant circumstances," *City of New York v. Mickalis Pawn Shop*, 645 F.3d 114, 133 (2d Cir. 2011), and should exercise "enhanced caution" when "a defendant wish[es] to contest whether it [is] obliged to defend in a distant court." *Hamilton*, 197 F.3d at 60.

      1.   *Did Coudert fail to timely raise its personal jurisdiction defense?*

Rule 12(h)(1) provides that "[a] defense of lack of jurisdiction over the person . . . is waived . . . if it is neither made by motion under this rule nor included in a responsive pleading." In other words, "a party forfeits its defense of lack of personal jurisdiction by failing timely to raise the defense in its initial responsive pleading." *Mickalis Pawn Shop*, 645 F.3d at 134. Conversely, "a defendant's motion to dismiss for lack of personal jurisdiction, without more, is sufficient to avoid the waiver provision embodied in Rule 12." *Peterson v. Highland Music*, 140 F.3d 1313, 1318 (9th Cir. 1998); *cf. Mattel, Inc. v. Barbie-Club.com*, 310 F.3d 293, 307 (2d Cir. 2002) ("T]o preserve the defense of lack of personal jurisdiction, a defendant need only state the defense in its first responsive filing . . . .").

Statek argues that Coudert forfeited its personal jurisdiction defense by failing to "file a motion to dismiss within 30 days of its appearance in the case," as required by Conn. Prac. Book § 10-30. Mem. Opp'n, Doc. No. 90, at 18; *see* Conn. Prac. Book § 10-32 ("Any claim of lack of jurisdiction over the person . . . is waived if not raised by a motion to dismiss . . . within the time provided by Section 10-30."); *Pitchell v. City of Hartford*, 247 Conn. 422, 433 (1999) ("[T]hirty-one days after the filing of an appearance or the failure to adhere to the requisite [pleading]

sequence, a party is deemed to have submitted to the jurisdiction of the court."). Statek observes that Coudert filed a general appearance in Superior Court on November 22, 2005. Hence, Coudert initially had until December 22, 2005 to file a motion to dismiss.

Statek acknowledges that "removal of a state court action to federal court tolls the pleading deadlines under the Practice Book." Mem. Opp'n, Doc. No. 90, at 19 (citing *Traylor v. Parker*, 2015 WL 4879984, at *2–*4 (Conn. Super. Ct. July 8, 2015)). Thus, there is no dispute that Coudert's deadline was tolled when Beharrell initially removed the case to this court. After remand, however, Statek argues that the "deadlines continued to run." *Id.* Statek asserts that— excluding the period in which the case was pending before Judge Arterton—Coudert did not move to dismiss until more than 30 days after its appearance in state court. Therefore, Statek claims, Coudert "waived any personal jurisdiction defense . . . by failing to make a timely motion to dismiss the state court case." *Id.* at 19–20.

As Coudert points out, Statek's argument is based on an obvious misreading of the dates on which documents were filed. *See* Reply Mem., Doc. No. 95, at 6. Statek states that the case was removed on December 22, 2005, "the very last day of Coudert's 30-day period to move to dismiss," which would mean that "upon remand . . . , Coudert's deadline to move to dismiss was no later than the next day," January 26, 2006. Mem. Opp'n, Doc. No. 90, at 19. In fact, however, Coudert's notice of removal was filed on December 12, 2005, ten days *before* the expiration of Coudert's opportunity to challenge personal jurisdiction in state court. *See* Notice of Removal, Doc. No. 1, *Statek I*. Because the deadline was tolled while the case was in federal court, Coudert had another ten days after remand to move to dismiss for lack of personal jurisdiction. Coudert filed its motion to dismiss on February 6, 2006, the first business day after the ten-day period expired on Sunday, February 5, 2006. *See* Reply Mem., Doc. No. 95, at 7; *see also* Conn. Prac.

Book § 7-17 ("If the last day for filing any matter in the clerk's office falls on a day on which such office is not open . . . , then the last day for filing shall be the next business day upon which such office is open."). Thus, Coudert "timely . . . raise[d] the defense in its initial responsive pleading," and did not waive its right to challenge personal jurisdiction under Rule 12(h)(1) or Conn. Prac. Book § 10-30. *See Mickalis Pawn Shop*, 645 F.3d at 134.

    2.   *Did Coudert forfeit its personal jurisdiction defense by its conduct?*

    Even if "the waiver provided for by Rule 12(h) did not occur," Coudert may have waived or forfeited its personal jurisdiction defense "as a result of the course of conduct pursued . . . during litigation." *Hamilton*, 197 F.3d at 60; *Mickalis Pawn Shop*, 645 F.3d at 134; *see Moss v. Wyeth, Inc.*, 872 F. Supp. 2d 154, 161 (D. Conn. 2012) ("[A]ny personal jurisdiction defense . . . can be waived . . . by submission through conduct.") (quoting *Neirbo Co. v. Bethlehem Shipbldg. Co.*, 308 U.S. 165, 168 (1939)). That is, I may exercise "personal jurisdiction over [Coudert] if '[t]he actions of the defendant during the litigation . . . amount to a legal submission to the jurisdiction of the court, whether voluntary or not.'" *Mickalis Pawn Shop*, 645 F.3d at 134 (quoting *Bauxites*, 456 U.S. at 704–05) (internal brackets omitted).

    Courts generally apply "two . . . organizing principles for the 'waiver-by-conduct' analysis." *Matthews v. Brookstone Stores*, 431 F. Supp. 2d 1219, 1224 (S.D. Ala. 2006). First, courts are more likely to find a waiver when a greater "length of time . . . [has] elapse[d] between service of process and a defendant's pursuit of a personal jurisdiction defense." *Id.* "Although the passage of time alone is generally not sufficient to indicate forfeiture of a procedural right," the amount of time "between the assertion of the defense in the answer and the litigation of the defense in a motion . . . provides the context in which to assess the significance of the defendant's conduct." *Hamilton*, 197 F.3d at 61. "In most cases where courts have found waiver,

the defendant has waited multiple years after its answer to file a motion to dismiss." *In re Helicopter Crash Near Wendle Creek, Brit. Columbia on Aug. 8, 2002*, 485 F. Supp. 2d 47, 52 (D. Conn. 2007) ("*Helicopter Crash*") (citing *Santos v. State Farm Fire & Cas. Co.*, 902 F.2d 1092 (2d Cir. 1990)). For instance, the Second Circuit has held that "a defendant that asserted a jurisdictional defense in its answer, but failed actively to litigate that defense until four years later, forfeited the defense by forgoing the opportunity to raise it sooner." *Mickalis Pawn Shop*, 645 F.3d at 134 (citing *Hamilton*, 197 F.3d at 60–62).

As a second "organizing principle," courts are more likely to deem a defendant to "have waived defects in personal jurisdiction" when the defendant has been "active . . . in litigating [the] case." *Matthews*, 431 F. Supp. 2d at 1225. That is, when a defendant "participat[ed] in extensive pretrial proceedings" and forwent "numerous opportunities to move to dismiss," courts often hold that the defendant "forfeited its defense of lack of personal jurisdiction." *Hamilton*, 197 F.3d at 60. The reason is to prevent "gamesmanship" or "sandbagging," the practice by which a defendant "unsuccessfully raises a jurisdictional objection at the outset," then "deliberately refrains from pursuing it any further . . . in the hopes of receiving a favorable disposition on the merits," and finally "seek[s] to renew [the] jurisdictional argument on appeal following an adverse determination on the merits." *Corporacion Mexicana de Mantenimiento Integral v. Pemex-Exploracion y Produccion*, 832 F.3d 92, 113 (2d Cir. 2016) (Winter, J., concurring) ("*Pemex-Exploracion*") (quoting *Peterson*, 140 F.3d at 1318); *Mickalis Pawn Shop*, 645 F.3d at 134. By "sandbagging," a defendant hopes to maintain the possibility of "obtaining a favorable ruling on the merits," while simultaneously "preserv[ing] any . . . personal jurisdiction and venue defenses" that would allow it to avoid judgment when "a loss on the merits appears likely." *Pemex-Exploracion*, 832 F.3d at 112 (Winter, J., concurring). Because such conduct

wastes the court's time and potentially "deceive[s] the opposing party," courts often hold that "engag[ing] in substantial pretrial activity" forfeits personal jurisdiction defenses. *Helicopter Crash*, 485 F. Supp. 2d at 52.

Here, Statek argues that Coudert "submitted to this Court's jurisdiction" by "abandoning its personal jurisdiction defense and litigating this case on the merits since 2008." Mem. Opp'n, Doc. No. 90, at 20. After I reopened the case in 2008, "Coudert never took any action to obtain a ruling" on jurisdiction besides briefly reiterating its request that I dismiss the case for lack of personal jurisdiction. *Id.* at 21. Nor did Coudert press its challenge to personal jurisdiction in the Bankruptcy Court, even though Statek asserts that "Coudert could have argued that lack of personal jurisdiction over it in Connecticut rendered [Statek's] Bankruptcy Claim worthless." *Id.* at 22. Statek concedes that Coudert did "belated[ly]" contend in its petition for rehearing before the Second Circuit that "Connecticut law could not apply to Statek's Bankruptcy Claim" because Coudert "was not subject to personal jurisdiction in Connecticut." *Id.* But according to Statek, "[t]here is no reason th[at] argument would not have been available to Coudert in the earlier proceedings before the Bankruptcy Court." *Id.* at 24. In any event, Coudert "again declined to press its personal jurisdictional defense" when the case was remanded to the Bankruptcy Court and appealed once more to the Second Circuit. *See id.* at 23. Thus, because Coudert let pass "numerous opportunities . . . to litigate the jurisdictional issue," Statek insists that Coudert "forfeited its defense." *See Hamilton*, 197 F.3d at 60–61.

Coudert disagrees. It argues that it was under no obligation to move to dismiss after this case was reopened, because the action in this court was effectively "on hold" pending resolution of the bankruptcy proceedings.[7] *See* Reply Mem., Doc. No. 95, at 8. While the bankruptcy case

---

[7] Indeed, the case was administratively closed from 2009 through 2017.

was pending, Coudert had no reason to move to dismiss for lack of personal jurisdiction because "the New York bankruptcy court indisputably ha[d] personal jurisdiction over Coudert." *Id.* at 10. Coudert was only motivated to press its personal jurisdiction challenge once Statek moved the Bankruptcy Court to reconsider its order disallowing Statek's claim. At that point, Statek "for the first time . . . argued that the court was bound to follow the choice of law rules of Connecticut." *Id.* at 10 n.4. In response to Statek's argument, Coudert did contend—both before and after the Second Circuit vacated and remanded—that the Bankruptcy Court should not apply Connecticut's choice-of-law rules because there was no personal jurisdiction in Connecticut. *See id.* Hence, Coudert asserts that Statek cannot "credibl[y]" suggest that "it has been unfairly surprised by Coudert's pursuit of th[e] [personal jurisdiction] defense." *Id.*

The nine-year delay in resolving Coudert's jurisdictional challenge is "regrettable," *see Phat Fashions v. Phat Game Athletic Apparel*, 2001 WL 1041990, at *4 (S.D.N.Y. Sept. 7, 2001), but in light of the "irregular procedural history of this case," *Sands Harbor Marina Corp. v. Wells Fargo Ins. Servs. of Or.*, 156 F. Supp. 3d 348, 356 (E.D.N.Y. 2016), I conclude that Coudert did not forfeit its defense of lack of personal jurisdiction. Coudert did not "participat[e] in extensive pretrial proceedings" before this court, *Hamilton*, 197 F.3d at 60, because the case was inactive from the time I granted the motions to dismiss in 2008 until Statek moved to reopen in 2017. *Cf. Gerber v. Riordan*, 649 F.3d 514, 519 (6th Cir. 2011) ("A motion to stay . . . does not come close to what is required for waiver or forfeiture of a personal jurisdiction defense.") (internal quotation marks omitted); *accord Ramasamy v. Essar Global*, 825 F. Supp. 2d 466, 467 n.1 (S.D.N.Y. 2011). Although the bankruptcy case was active, it, too, never "progressed very far," because Coudert's threshold objections ensured that the Bankruptcy Court never addressed the merits of Statek's claims. *Cf. Barclay v. Pawlak*, 2011 WL 577332, at *2 (D. Conn. Feb. 9,

2011) ("While a defense raised in an answer can later be deemed to have been waived if several years and significant proceedings in the case have transpired in the interim, that is not the case here."). Coudert's actions are easily distinguished from those in cases cited by Statek, where "defendants fully participated in litigation of the merits for . . . years without actively contesting personal jurisdiction." *Cf. Cont'l Bank v. Meyer*, 10 F.3d 1293, 1297 (7th Cir. 1993).

Furthermore, Coudert initially had no reason to challenge its amenability to jurisdiction in Connecticut before the Bankruptcy Court. Not only was the Bankruptcy Court located in New York—where Coudert clearly is subject to jurisdiction—but also personal jurisdiction in bankruptcy proceedings is established by the defendant's "minimum contacts with the U.S. at large," not its minimum contacts with a particular state. *See In re Dewey & LeBoeuf LLP*, 522 B.R. 464, 473 & n.5 (Bankr. S.D.N.Y. 2014). In any event, Coudert clearly submitted to the Bankruptcy Court's jurisdiction by filing a petition with it. *See* Bankr. Hr'g Tr. (Bankr. S.D.N.Y. Oct. 22, 2012), Ex. E to Reply Mem., Doc. No. 95-6, at 7. Therefore, Coudert lacked an incentive to press its jurisdictional objections before the Bankruptcy Court.

Coudert only was incentivized to litigate the jurisdictional issue once Statek argued that Connecticut's choice-of-law rules should apply to Statek's claim in Bankruptcy Court. But Statek first raised that issue in its motion for reconsideration on July 31, 2009, *see id.* at 9, after it unsuccessfully contended that federal or English choice-of-law rules should apply to the bankruptcy claim. Coudert apparently responded that, because there was no personal jurisdiction in Connecticut, Connecticut's choice-of-law rules should not apply, *see* Reply Mem., Doc. No. 95, at 10 n.4, but none of the courts in *Coudert I*, *Coudert II*, or *Coudert III* took up the personal jurisdiction issue. On remand in *Coudert IV*, the Bankruptcy Court expressly declined to "address [Coudert]'s argument that the Connecticut court lacked personal jurisdiction," 2013 WL

4478824, at *8 n.12, and on Statek's second appeal in *Coudert V*, the Second Circuit also did not

mention personal jurisdiction. Thus, Coudert does seem to have revived its personal jurisdiction

objection once it became relevant, but the courts in the bankruptcy proceedings elected to decide

the choice-of-law issue on other grounds.

In a further attempt to bolster its claim of forfeiture, Statek implies that Coudert

prolonged the litigation by "ma[king] a strategic decision to move on from its personal

jurisdiction arguments in favor of its statute of limitations defense." Mem. Opp'n, Doc. No. 90,

at 21–22. Had Coudert pressed its objection to personal jurisdiction before the Bankruptcy Court,

Statek asserts, the parties would "not . . . be litigating [the defense] 12 years into [the] case." *Id.*

at 20. Statek belabored this contention before the Bankruptcy Court, which thoroughly rejected

it. Coudert's objection to personal objection would not have "kill[ed] the case," the Bankruptcy

Court stated, "because Statek filed a proof of claim in the Bankruptcy Court," and Coudert

submitted to that court's jurisdiction when it filed for bankruptcy. Bankr. Hr'g Tr. (Bankr.

S.D.N.Y. Oct. 22, 2012), Doc. No. 95-6, at 7; *see also id.* at 9 ("[COUNSEL FOR STATEK]: I

think that this whole case would have been resolved a lot sooner if their motion to dismiss for

lack of personal jurisdiction was dealt with way back when before Judge Underhill . . . . THE

COURT: No, but it wouldn't. It wouldn't because you could still file your proof of claim. It

wouldn't have mattered."); *id.* at 9–10 ("[COUNSEL FOR STATEK]: [T]hey raised [personal

jurisdiction] in their answer and they raised it in a motion before Judge Underhill. THE COURT:

But . . . I can only say this one more time and I'll only say it one more time. There was an

important intervening event which is the bankruptcy case . . . . [T]hey have personal jurisdiction

in the bankruptcy case."). The "only reason to raise the [personal jurisdiction] argument," the

Bankruptcy Court reasoned, "was on [the] statute of limitations" issue, but Statek did not claim

that "Connecticut law appl[ied] . . . [until] July 31, 2009." *Id.* at 9. Thus, prior to Statek's motion for reconsideration, neither Coudert nor the bankruptcy judge "knew that [the] issue" of "the application of Connecticut law . . . was out there," because Statek "didn't raise it." *Id.* at 10.

After Statek tardily asserted that Connecticut's choice-of-law rules governed, Coudert consistently argued that Connecticut law did not apply because Coudert was not subject to personal jurisdiction in Connecticut. *See, e.g.*, Pet. Rehr'g (2d Cir. Mar. 13, 2012), Ex. F to Mem. Opp'n, Doc. No. 90-1, at 86. Contrary to Statek's depiction, Coudert never "create[d] the impression that [it] ha[d] abandoned . . . [its] jurisdictional argument." *See Mickalis Pawn Shop*, 645 F.3d at 134; *cf. Moss*, 872 F. Supp. 2d at 162 ("Wyeth abandoned any objection to insufficient service of process when it failed to raise the defense in its responsive pleading and continued to litigate the case year after year without ever questioning plaintiffs' failure to file the executed waiver of service form."). Coudert cannot be deemed to have forfeited its personal jurisdiction defense simply because it "did not argue . . . [the] defense[] at every possible stage of litigation." *See Pemex-Exploracion*, 832 F.3d at 114 (Winter, J., concurring).

Finally, Statek has not persuasively alleged that Coudert engaged in "gamesmanship" or "sandbagging," the conduct that has "be[en] principally found" to lead to forfeiture. *See id.* Indeed, because Coudert contends that Connecticut "was the only conceivable place in the United States where it was possible the statute of limitations had not run," Mem. Supp., Doc. No. 86-25, at 35, Coudert lacked any incentive to "deliberately avoid[] a final disposition of personal jurisdiction" in the hopes of "obtaining a favorable ruling on the merits that would constitute *res judicata*." *See Pemex-Exploracion*, 832 F.3d at 112. According to Coudert, if Coudert could not be sued by Statek in Connecticut, then it could not be sued anywhere in the United States. Under those circumstances, I consider it more likely that Coudert did not initially pursue its

jurisdictional defense in Bankruptcy Court because the issue was irrelevant, rather than that Coudert inexplicably "forfeit[ed] its meritorious defense" that might have entirely precluded Statek's claims. *See* Reply Mem., Doc. No. 95, at 12.

After considering "all of the relevant circumstances," *see Mickalis Pawn Shop*, 645 F.3d at 133, I conclude that Coudert timely raised its defense of lack of personal jurisdiction and reiterated it at appropriate points throughout the lengthy bankruptcy proceedings. Therefore, I hold that Coudert did not forfeit its defense of lack of personal jurisdiction.

## C. Is Coudert subject to personal jurisdiction in Connecticut?

For a district court to lawfully exercise personal jurisdiction, (1) the defendant must have been properly served; (2) the defendant must be "subject to the jurisdiction of a court of general jurisdiction in the state where the district court is located," *see* Fed. R. Civ. P. 4(k); and (3) the exercise of personal jurisdiction must comply with the Due Process Clause of the Fourteenth Amendment. *See Waldman*, 835 F.3d at 327. No one disputes that Coudert was properly served. Thus, Statek bears the burden to establish the remaining two elements. *See id.* at 334.

The Supreme Court has distinguished between "two types of personal jurisdiction: 'general' (sometimes called 'all-purpose') jurisdiction and 'specific' (sometimes called 'case-linked') jurisdiction." *Bristol-Myers Squibb Co. v. Superior Court*, 582 U.S. __ , 137 S. Ct. 1773, 1780 (2017). General jurisdiction empowers "[a] court . . . [to] hear any claim against [a] defendant, even if all the incidents underlying the claim occurred in a different State." *Id.* But "only a limited set of affiliations with a forum will render a defendant amenable to all-purpose jurisdiction there." *Daimler*, 134 S. Ct. at 760. "[G]eneral jurisdiction requires affiliations 'so "continuous and systematic" as to render the foreign corporation essentially at home in the forum State,' *i.e.*, comparable to a domestic enterprise in that State." *Id.* at 758 n.11 (quoting *Goodyear*

*Dunlop Tires Operations v. Brown*, 564 U.S. 915, 919 (2011) ("*Goodyear*")). "Being 'essentially at home' in a place is a very high bar, almost never found for corporations where they are neither incorporated nor headquartered." *In re Aggrenox Antitrust Litig.*, 94 F. Supp. 3d 224, 256 (D. Conn. 2015) ("*Aggrenox*"). In the present case, Coudert—which was "organized under the laws of . . . New York," had a "principal place of business . . . in New York City," and "never had an office in Connecticut," *see* Bogen Aff., Doc. No. 86-24, at 1—clearly was not so "continuous[ly] and systematic[ally]" affiliated with Connecticut "as to render [it] essentially at home" here. *See Goodyear*, 564 U.S. at 919. Therefore, the Amended Complaint does not "plead facts even close to a plausible claim of general jurisdiction" over Coudert. *See Aggrenox*, 94 F. Supp. 3d at 256.

Specific jurisdiction, unlike general jurisdiction, does not demand that a defendant be "essentially at home" in the forum state. *Cf. Goodyear*, 564 U.S. at 919. Instead, specific jurisdiction "focuses on the relationship among the defendant, the forum, and the litigation," *Walden v. Fiore*, 571 U.S. __, 134 S. Ct. 1115, 1121 (2014) (internal quotation marks omitted), and "is confined to adjudication of issues deriving from, or connected with, the very controversy that establishes jurisdiction." *Bristol-Myers Squibb*, 137 S. Ct. at 1780. For specific jurisdiction to apply, "there must be 'an affiliation between the forum and the underlying controversy,'" often taking the form of "an activity or an occurrence that takes place in the forum State and is therefore subject to the State's regulation." *Id.* (internal brackets omitted) (quoting *Goodyear*, 564 U.S. at 919). In short, specific jurisdiction requires that "the suit . . . arise out of or relate to the defendant's contacts with the forum." *Id.* (internal quotation marks, brackets, and emphasis omitted). "When there is no such connection, specific jurisdiction is lacking regardless of the extent of a defendant's unconnected activities in the State." *Id.* at 1781.

To determine whether Coudert is subject to personal jurisdiction in Connecticut, I "must look first to the long-arm statute of the forum state," namely, Conn. Gen. Stat. § 52-59b(a). *See Friedman*, 871 F.3d at 191. Because "[t]he Connecticut long-arm statute . . . does not provide for jurisdiction to the limits of due process," *id.* at 192, "it is only once the long-arm statute is deemed satisfied that the court need examine whether due process is likewise comported with." *See Bank Brussels Lambert v. Fiddler Gonzalez & Rodriguez*, 305 F.3d 120, 127 (2d Cir. 2002) (Sotomayor, J.). I will examine the long-arm statute and due process in turn.

1. *Is personal jurisdiction authorized by Connecticut's long-arm statute?*

Section 52-59b(a) provides for the exercise of long-arm jurisdiction over a nonresident partnership when the defendant: (1) "transacts any business within the same," Conn. Gen. Stat. § 52-59b(a)(1); (2) "commits a tortious act within the state," *id.* at § 52-59b(a)(2); or (3) "commits a tortious act outside the state causing injury to person or property within the state," provided that the defendant either (A) "regularly does or solicits business, or engages in any other persistent course of conduct, or derives substantial revenue from goods used or consumed or services rendered, in the state," or "(B) expects or should reasonably expect the act to have consequences in the state and derives substantial revenue from interstate or international commerce." *Id.* at § 52-59b(a)(3). In addition, the "cause of action" must "aris[e] from" the defendant's contacts with the state. *See id.* at § 52-59b(a). Statek only claims that Coudert is subject to jurisdiction under section 52-59b(a)(1) (transacts business within the state) and section 52-59b(a)(3) (commits a tortious act outside the state causing injury within the state). I conclude that neither provision authorizes jurisdiction over Coudert.

a.   Is personal jurisdiction authorized under section 52-59b(a)(1)?

To be subject to jurisdiction under section 52-59b(a)(1), Statek must show that (1) Coudert "transact[ed] business" in Connecticut, and (2) Statek's cause of action "arose from [Coudert]'s business activity in th[e] state." *Ryan v. Cerullo*, 282 Conn. 109, 121–22 (2007); *Rosenblit v. Danaher*, 206 Conn. 125, 138, 140–41 (1988). "The statute does not define what the phrase 'transact any business' means," *Ryan*, 282 Conn. at 122, but in *Zartolas v. Nisenfeld*, the Connecticut Supreme Court "construe[d] the term . . . to embrace a single purposeful business transaction." 184 Conn. 471, 474 (1981). "A purposeful business transaction is one in which the defendant has engaged in some form of affirmative conduct allowing or promoting the transaction of business within the forum state." *Nusbaum & Parrino, P.C. v. Collazo de Colon*, 618 F. Supp. 2d 156, 162 (D. Conn. 2009).

Statek has not shown that Coudert "transact[ed] business" in Connecticut. *See Rosenblit*, 206 Conn. at 140–41. Coudert "never had an office in Connecticut," Bogen Aff., Doc. No. 86-24, at 2, did "not advertise[] in . . . Connecticut," Kane Aff., Doc. No. 86-17, at 4, and did "not regularly solicit[] or do[] business in . . . Connecticut." *Id.* Coudert also "engaged local counsel when litigating for clients in . . . Connecticut" and performed "[s]ubstantially all work for [Connecticut] clients . . . in Coudert's offices in jurisdictions other than . . . Connecticut." *Id.* at 3–4. To be sure, Coudert's lack of physical presence in Connecticut is not dispositive, because "in this day of instant long-range communications, one can engage in extensive purposeful activity . . . without ever actually setting foot in [a] State." *Under Par Assocs. v. Wash Depot A*, 47 Conn. Supp. 319, 322 (2001); *accord Burger King Corp. v. Rudzewicz*, 471 U.S. 462, 476 (1985) ("[I]t is an inescapable fact of modern commercial life that a substantial amount of business is transacted solely by mail and wire communications across state lines, thus obviating the need for physical presence within a State in which business is conducted.") When viewed in

connection with Coudert's "minimal income [derived] from Connecticut residents,"[8] however, *see Ryan*, 282 Conn. at 120, Coudert's "absence of physical contacts" underscores that its representation of a few Connecticut-based clients in out-of-state proceedings did not constitute a "transaction of business *within* the forum state." *See Burger King*, 471 U.S. at 476; *Collazo de Colon*, 618 F. Supp. 2d at 162 (emphasis added); *cf. Rosenblit*, 206 Conn. at 140–41 (no jurisdiction under section 52-59b(a)(1) where "two Connecticut residents . . . hired an attorney, who resided and practiced law in Massachusetts, to bring an action that arose out of a series of contacts by the plaintiffs with Massachusetts residents"); *Walshon v. Ballon Stoll Bader & Nadler, P.C.*, 121 Conn. App. 366, 374 (2010) ("Although the defendant knew the plaintiff, its client, resided in Connecticut, there is nothing to indicate that the defendant anticipated litigating or arbitrating in Connecticut."); *Eastboro Found. Charitable Tr. v. Penzer*, 950 F. Supp. 2d 648, 655 (S.D.N.Y. 2013) (attorney who did not have "employees, an office, real estate, a bank account, or a phone listing in New York," and who did not "solicit[] or market[] his services in New York," was not subject to jurisdiction under N.Y. Civ. Prac. L. & R. § 302).

Assuming that Statek was based in Connecticut during the period in which it retained Coudert as counsel,[9] "any relationship or nexus between [Coudert]'s activities and this state

---

[8] Between 1990 and 1996, Coudert's Connecticut clients never numbered more than 13 in a given year, and never accounted for more than 1.5 percent of the firm's revenues in the United States. *See* Bogen Aff., Doc. No. 86-24, at 2; *see also* Kane Aff., Doc. No. 86-17, at 3 (between 2000 and 2005, "Coudert added more than 10,000 new clients, approximately 95 [of whom had] billing addresses in . . . Connecticut").

[9] Although Statek is incorporated in California and has always based its manufacturing facilities there, until 1996, Statek's former directors Johnston and Spillane maintained the firm's official headquarters in Stamford, Connecticut. *See* Mem. Supp., Doc. No. 86-25, at 15. When I dismissed the case on forum non conveniens grounds in 2008, I noted that "Connecticut . . . was in effect a sales post and was not a place where Statek transacted any real business." *See* Mot. Hr'g Tr. (D. Conn. Feb. 21, 2008), Ex. D to Mot. Dismiss, Doc. No. 86-5, at 14–15.

simply is too attenuated to support the conclusion that the [legal] services [Coudert] performed for the plaintiff constituted transacting business in this state for purposes of § 52-59b(a)(1)." *Id.* at 121. Statek does not plausibly allege that Coudert performed services in Connecticut for Statek, Johnston, or Spillane. Rather, as I noted during the hearing on the motion to dismiss on the basis of forum non conveniens, Coudert's and Beharrell's activities "occurred almost exclusively, if not exclusively in England." Mot. Hr'g Tr., Doc. No. 86-5, at 8. What's more—by Statek's own admission, *see* Am. Compl., Doc. No. 65, at 6—those activities concerned legal transactions in London, the Channel Islands, and the Bahamas. For example, the documents by which Coudert attempted to set up a European subsidiary for Statek stated that the subsidiary was "incorporated in England," provided that the contract was "governed by . . . English law," and identified Statek's "principal office" as located in "Orange, California." *See* Ex. B to Mem. Opp'n, Doc. No. 90-2, at 38–40; *cf. Schur v. Porter*, 712 F. Supp. 1140, 1145 (S.D.N.Y. 1989) (deeming it "fair and reasonable" for a Maryland attorney "to have expected to defend [its] services in a New York court" when the attorney "represented the plaintiffs in the negotiation and drafting of . . . [two] partnerships [that] were formed in New York to own and operate New York properties, and [which] were governed by New York law"). Coudert's out-of-state business for a Connecticut client does not subject it to jurisdiction in Connecticut. *See Weiss v. Greenburg, Traurig, Askew, Hoffman, Lipoff, Quentel & Wolff, P.A.*, 85 A.D.2d 861, 861 (3d Dep't 1981) ("Defendant law firm was retained in Florida by plaintiff as local counsel in . . . Florida . . . . The fact that defendant knew it was dealing with a New York resident . . . is not sufficient in and of itself to establish personal jurisdiction" in New York.)

---

Nevertheless, Johnston and Spillane certainly received communications in Connecticut from Coudert before they were ousted as Statek's directors.

As I stated at the earlier hearing, Statek's only attempt in the complaint to "tie . . . any allegation against the defendants to Connecticut" is to allege that "bills were mailed to Statek . . . in Stamford, Connecticut." Mot. Hr'g Tr., Doc. No. 86-5, at 8. Such "mail contacts" are insufficient to establish jurisdiction under section 52-59b(a)(1), unless the defendant "projected [it]self by those means" into Connecticut in such a way that it "purposefully availed [it]self . . . of the benefits and protections of [Connecticut's] laws." *Green v. Simmons*, 100 Conn. App. 600, 605 (2007). Here, Coudert merely mailed to Connecticut bills for services that were performed and directed elsewhere. By mailing the bills, Coudert did not "transact[] business within Connecticut." *See Green*, 100 Conn. App. at 608; *see also id.* ("Apart from mailing two letters, the defendants did nothing whatsoever to project themselves into Connecticut or purposefully avail themselves of the benefits or protections of its laws."); *accord Bloomgarden v. Lanza*, 143 A.D.3d 850, 852 (2d Dep't 2016) ("The defendants communicated from California with the plaintiffs in New York . . . because the plaintiffs were New York domiciliaries, not because the defendants were actively participating in transactions in New York, and the communications . . . all concerned the services that the defendants were performing in Florida.").

Moreover, even were I to reach a different conclusion with respect to whether Coudert transacted business in Connecticut, Statek cannot meet section 52-59b(a)(1)'s second requirement, namely, that Statek's "cause of action against [Coudert] arose from [Coudert]'s business activity in this state." *See Ryan*, 282 Conn. at 121–22. "In determining whether the plaintiff's cause of action arose from the defendants' transaction of business within this state," the Connecticut Supreme Court has cautioned courts "not to resort to a rigid formula." *Id.* at 122 (quoting *Zartolas*, 184 Conn. at 477). Instead, courts should "balance considerations of public policy, common sense, and the chronology and geography of the relevant factors." *Id.* (quoting

*Zartolas*, 184 Conn. at 477). Relevant considerations include (1) "whether the defendant entered into an ongoing contractual relationship with a Connecticut-based plaintiff"; (2) "whether the contract was negotiated in Connecticut"; (3) "whether, after executing a contract with the defendant, the defendant visited Connecticut to meet with the plaintiff or communicated with the plaintiff as part of the contractual relationship"; (4) and "whether the contract contains a Connecticut choice-of-law provision." *See Collazo de Colon*, 618 F. Supp. 2d at 161.

Under New York's substantially identical long-arm statute,[10] "[a] suit will be deemed to have arisen out of a party's activities in New York if there is an articulable nexus, or a substantial relationship, between the claim asserted and the actions that occurred in New York." *Licci*, 673 F.3d at 66; *accord Licci ex rel. Licci v. Leb. Can. Bank*, 20 N.Y.3d 327, 339 (2012). "This inquiry is a fact-specific one, and the point at which the connection between the parties' activities in New York and the plaintiffs' claim crosses the line from 'substantially related' to 'mere coincidence' is not always self-evident." *Licci*, 673 F.3d at 67 (internal brackets omitted). "[C]ausation is not required" to meet section 302's "relatively permissive" standard. *Licci*, 20 N.Y.3d at 339. Instead, the statute demands, "at a minimum, a relatedness between the transaction and the legal claim such that the latter is not completely unmoored from the former." *Id.* at 339. "[T]he 'arise-from' prong limits the broader 'transaction-of-business' prong to confer jurisdiction only over those claims in some way arguably connected to the transaction," *id.* at 339–40, and excludes claims for which "the event giving rise to the plaintiff's injury had, at best, a tangential relationship to any contacts the defendant had to New York." *Licci*, 673 F.3d at 67.

---

[10] "Because "in enacting [Conn. Gen. Stat.] § 52-59b, the [Connecticut] legislature used . . . [N.Y. Civ. Prac. L. & R.] § 302 as a model," Connecticut courts "find pertinent the judicial interpretation given to that New York statute" and "have looked to New York courts for guidance" in construing Connecticut's own long-arm statute. *See Savin v. Ranier*, 898 F.2d 304, 306 (2d Cir. 1990) (quoting *Zartolas v. Nisenfeld*, 184 Conn. 471, 474 (1981)).

Applying "the judicial interpretation given to th[e] New York statute" to section 52-59b(a)(1), *see Savin*, 898 F.2d at 306 (quoting *Zartolas*, 184 Conn. at 474), I conclude that Statek must plausibly allege that its "cause of action is sufficiently related to the business transacted that it would not be unfair to deem it to arise out of the transacted business, and to subject [Coudert] to suit in [Connecticut]." *Hoffritz for Cutlery v. Amajac, Ltd.*, 763 F.2d 55, 59 (2d Cir. 1985). Statek cannot do so. Unlike the original complaint, which directly "accused Coudert of complicity in the wrongdoing of [Johnston and Spillane]," Mem. Supp., Doc. No. 86-25, at 9 n.2; *see* Compl., Doc. No. 1-4, Statek's Amended Complaint alleges only that "Coudert's London office failed to provide [Statek] with certain information in California." *See* Mem. Supp., Doc. No. 86-25, at 10; *cf.* Werren Aff., Ex. H to Mot. Dismiss, Doc. No. 86-9, at 3 ("At all times, Statek's manufacturing headquarters and accounting department were located in California. . . . All legitimate business activities of Statek were handled in California."). That allegation has "nothing to do with anything that occurred or had its principal impact in" Connecticut. *See Daimler*, 134 S. Ct. at 762. Even though "Connecticut . . . obviously has a greater connection to the underlying fraud" by Johnston and Spillane—and the information in Coudert's files ultimately pertains to that fraud—I already noted that "in terms of the claims that are made *against these defendants*, there is very little connection to Connecticut." Mot. Hr'g Tr., Doc. No. 86-5, at 13 (emphasis added). Therefore, I conclude that Statek has not shown that its "cause of action is sufficiently related to [any] business transacted" in Connecticut to "deem [the claim] to arise out of the transacted business." *Hoffritz for Cutlery*, 763 F.2d at 59.

    b.   Is personal jurisdiction authorized under section 52-59b(a)(3)?

Section 52-59b(a)(3) "confers jurisdiction over an individual (1) who commits a tortious act outside of Connecticut; (2) which causes injury inside the state; (3) who expects or should

expect that the act will have consequences in Connecticut; and (4) who derives substantial revenue from interstate or international commerce." *Conn. Artcraft Corp. v. Smith*, 574 F. Supp. 626, 629 (D. Conn. 1983). Because Statek cannot show that Coudert's actions "caus[ed] injury to person or property within the state," Statek cannot establish jurisdiction under section 52-59b(a)(3). *See Whitaker*, 261 F.3d at 209. I need not consider the other elements.

To determine whether a tortious act "causes injury inside the state," courts "generally apply a situs-of-injury test, which asks them to locate the original event which caused the injury." *Robb v. Robb*, 620 F. Supp. 2d 282, 286 (D. Conn. 2009). "The location of a non-physical pecuniary injury for jurisdictional purposes is . . . where 'the critical events associated with the dispute took place.'" *Smith v. Morris & Manning*, 647 F. Supp. 101, 103–04 (S.D.N.Y. 1986) (quoting *Dytron Alloys Corp.*, 439 F.2d at 433); *see also Ryan*, 282 Conn. at 124 n.15 ("From all that appears, the situs of the plaintiff's injury is New York, where all of the critical events occurred."). "[I]n evaluating the 'critical events' for the purposes of jurisdiction, the plaintiff's residence or domicile within a state, in and of itself, is not a sufficient predicate for the exercise of jurisdiction," *Greene v. Sha-Na-Na*, 637 F. Supp. 591, 597 (D. Conn. 1986), for "courts must distinguish between the situs of the injury and the place where the plaintiff suffers damages." *Twine v. Levy*, 746 F. Supp. 1202, 1206 (E.D.N.Y. 1990). "[T]he statute 'is not satisfied by remote or consequential injuries which occur in [the state] only because the plaintiff is domiciled, incorporated or doing business in the state.'" *Greene*, 637 F. Supp. at 598 (quoting *Dytron Alloys Corp.*, 439 F.2d at 433). "[F]or purposes of asserting long arm jurisdiction," the "situs of the injury . . . is the place where the underlying, original event occurred which caused the injury." *Whitaker*, 261 F.3d at 209.

In a legal malpractice case, "[t]he situs of the injury is the location . . . [where] the alleged legal malpractice occurred." *See Bloomgarden*, 143 A.D.3d at 852. Here, Coudert's legal malpractice occurred in England—where "Coudert['s] and Beharrell['s] . . . activities . . . occurred almost exclusively," Mot. Hr'g Tr., Doc. No. 86-5, at 8—or (arguably) in New York, where the firm was headquartered and where Beharrell probably resided at the time that he was subpoenaed by the Bankruptcy Trustee.[11] *See* Am. Compl., Doc. No. 65, at 9. None of the "critical events" related to Statek's malpractice claim occurred in Connecticut. *See Ryan*, 282 Conn. at 124 n.15. Beharrell was not admitted to practice in Connecticut, *see* Beharrell Aff., Doc. No. 86-11, at 2, "did not travel to Connecticut in connection with [his] representation of [TCI II] or Statek," *id.* at 5, and "performed all work for Statek [] in London or Brussels." *See* Kane Aff., Doc. No. 86-17, at 3. The letters that tortiously failed to "provide . . . complete and accurate information" about Coudert's representation of Statek were mailed between Coudert's office in London and Statek's headquarters in California. *See, e.g.*, Ex. C to Mem. Opp'n, Doc. No. 90-2, at 108. The Bankruptcy Trustee's communications with Beharrell—which later were sent to Statek—were mailed between the Trustee's office in London and Coudert's office in New York. *See, e.g.*, Ex. D to Mem. Opp'n, Doc. No. 90-2, at 114. "Connecticut . . . obviously has a greater connection to the underlying fraud" by Johnston and Spillane, *see* Mot. Hr'g Tr., Doc.

---

[11] Beharrell was appointed chairman of Coudert in September 2001, *see* Compl., Doc. No. 1-4, at 3, after which he "moved to Coudert's New York office." Am. Compl., Doc. No. 65, at 9; *cf.* Ex. Q to Mot. Dismiss, Doc. No. 86-18, at 2. Beharrell stepped down as chairman in April 2003, Compl., Doc. No. 1-4, at 3, and returned to London "[a]t some point in 2004." Am. Compl., Doc. No. 65, at 9. The Bankruptcy Subpoena served subpoenas upon Coudert and Beharrell in the spring of 2004, *see id.*; because Beharrell was reported to "be returning to the UK shortly" at the end of June 2004, Ex. C to Mot. Dismiss, Doc. No. 86-4, at 6, he likely was still in New York when the subpoenas were served.

No. 86-5, at 13, but in terms of the claims made in the Amended Complaint,[12] Coudert's alleged malpractice "ha[s] nothing to do with anything that occurred or had its principal impact in" Connecticut. *See Daimler*, 134 S. Ct. at 762.

Statek makes two arguments why the situs of the injury should be deemed to be Connecticut, neither one convincing. First, Statek notes that "Coudert's client contacts were located at Statek's offices in Connecticut during the entire engagement," and that "Statek received Coudert's legal advice in Connecticut . . . by telephone, facsimile and other correspondence directed to [Johnston and Spillane] at Statek's Stamford, Connecticut office. Mem. Opp'n, Doc. No. 90, at 7–8. But Coudert's contacts with Johnston and Spillane are beside the point. Not only is "the plaintiff's residence or domicile within a state, in and of itself, not a sufficient predicate for the exercise of jurisdiction," *Greene*, 637 F. Supp. at 597, but also (as Statek admits) "Statek had closed its Connecticut office by the time it sought its files from Coudert." Mem. Opp'n, Doc. No. 90, at 36. Furthermore, one of Statek's directors, Margarita Werren, swore in 2008 that "[a]ll legitimate business activities of Statek were handled in California" and that "Johnston and Spillane's activities [in Connecticut] . . . were not in furtherance of Statek's ordinary course of business." Werren Aff., Doc. No. 86-9, at 3. Statek can hardly now claim that it was injured by Coudert in Connecticut after Johnston and Spillane were removed, when one of its directors has averred that all of Statek's "activities [in Connecticut] were not in furtherance of Statek's legitimate and ordinary business purposes and sales, but were in furtherance of [Johnston's and Spillane's] international fraud." *Id.*

---

[12] As noted, Statek's Amended Complaint drops any suggestion that Coudert directly abetted Johnston's and Spillane's wrongdoing. *See* Mem. Supp., Doc. No. 86-25, at 9 n.2.

Second, Statek contends that the "injury within the state" requirement is satisfied "because there were Statek assets located in Connecticut, and Coudert's failure to meet its obligation to turn over client files and other information requested of it frustrated Statek's efforts to recover those assets." Mem. Opp'n, Doc. No. 90, at 33. Statek spins a rather attenuated web of transactions involving a folk art collection that was used by Johnston to launder money stolen from Statek, and which was later sold by a New Haven art dealer, Frederick Giampietro. *See id.* at 33. "Giampietro sold pieces from that collection over the course of many years, deposited sales proceeds in excess of $1 million in his New Haven Savings Bank checking account, and periodically remitted those proceeds to Johnston and Spillane in Connecticut." *Id.* at 33. Both the folk art collection and the money derived from its sale had vanished by the time Statek and the Bankruptcy Trustee discovered the collection's existence in 2003. *See id.* at 34. As a result, Statek argues that "Coudert's malpractice clearly harmed Statek in Connecticut" because "[h]ad Coudert properly complied with Statek's 1996 file request, Statek would have learned in 1996 of the Folk Art Collection's consignment to Giampietro, and Statek would have taken the necessary action to recover the art and sales proceeds from Giampietro in Connecticut." *Id.*

As Coudert correctly replies, "Statek's lengthy and irrelevant discussion about a third party art dealer demonstrates neither any activity by Coudert nor injury to Statek in Connecticut." Reply Mem., Doc. No. 95, at 6. "[T]he unilateral activity of another party or a third person" cannot provide a basis for jurisdiction over a defendant. *See Burger King*, 471 U.S. at 475; *cf. Walden*, 134 S. Ct. at 1122 ("We have consistently rejected attempts to satisfy the defendant-focused 'minimum contacts' inquiry by demonstrating contacts between the plaintiff (or third parties) and the forum State."). Rather, to satisfy the requirements of the long-arm statute (as well as constitutional due process), "the relationship must arise out of contacts that the

'defendant *himself*' creates with the forum State." *Walden*, 134 S. Ct. at 1122 (quoting *Burger King*, 471 U.S. at 475) (emphasis in *Walden*). Coudert cannot be haled into court in Connecticut because third parties Johnston and Spillane (apparently unbeknownst to Coudert) conveyed some of the assets stolen from Statek to a third-party art dealer in the state.

In addition, the sale of the folk art collection is "too attenuated" and "coincidental . . . to support jurisdiction" over Coudert in Connecticut. *See Licci*, 673 F.3d at 66 (internal quotation marks omitted). Statek asserts that information belatedly received from Coudert in November 2002 led the Bankruptcy Trustee to "an entity named Artworld Shipping Limited [('Artworld')] in London." *See* Werren Decl., Doc. No. 90-2, at 3. Artworld provided the Bankruptcy Trustee with "a list of shipments of art," which indicated that, in November 1994, Johnston had shipped the folk art collection to LeBron Brothers, an "art handler and installer" in New York. *Id.* at 3–4; *see* Margalit Fox, Obituary, *James LeBron, a Wizard at Moving of Art, Dies at 76*, N.Y. Times, Mar. 31, 2005, http://www.nytimes.com/2005/03/31/arts/design/james-lebron-a-wizard-at-moving-of-art-dies-at-76.html. The Bankruptcy Trustee then subpoenaed LeBron Brothers, which informed the Trustee that "the November 1994 shipment from Artworld was delivered to Frederick Giampietro." Werren Decl., Doc. No. 90-2, at 4. When the Bankruptcy Trustee contacted Giampietro, Giampietro revealed that he had "sold pieces from the collection totaling more than $1.075 million" and transmitted the proceeds to Johnston and Spillane. *Id.* at 4–5. Statek claims that all the actions of Artworld, LeBron Brothers, and Giampietro, done at the direction of third parties Johnston and Spillane, establish that Statek was injured by Coudert in Connecticut because—but for Coudert's alleged malpractice—Statek might have learned about the folk art collection earlier and could have "taken the necessary action to recover the art and sales proceeds . . . in Connecticut." Mem. Opp'n, Doc. No. 90, at 34.

The convoluted chain from Coudert to Artworld, from Artworld to LeBron Brothers, and from LeBron Brothers to Giampietro demonstrates that the sale of the folk art collection is precisely the sort of "random, fortuitous, or attenuated contact[]" that cannot provide a basis for jurisdiction over Coudert. *See Walden*, 134 S. Ct. at 1223 (internal quotation marks omitted). Statek's reasoning suggests that Coudert could be sued anywhere in the world that Johnston and Spillane might have hidden wrongfully acquired assets, so long as information in Coudert's files might have led Statek—however indirectly—to those fraudulent gains. If Coudert's files contained a note that Johnston had a relationship with a German shipping company, and Johnston used that German shipping company to transfer paintings to an Alabaman art handler, and that Alabaman art handler in turn conveyed the paintings to an art dealer in Connecticut, then Statek's reasoning suggests that Coudert would be amenable to suit in Connecticut, regardless of whether Coudert (or Johnston, for that matter) had any awareness of the paintings' eventual destination of Connecticut. Such "attenuated" contacts with Connecticut do not satisfy the requirements of the long-arm statute. *See Ryan*, 282 Conn. at 121.

Furthermore, to the extent that Statek was harmed by Coudert's indirect involvement with the sale of the folk art collection, the situs of that injury was London—where "the alleged legal malpractice occurred," *see Bloomgarden*, 143 A.D.3d at 852—not Connecticut, "where the plaintiff suffer[ed] damages" from the sale of the art. *See Twine*, 746 F. Supp. at 1206; *see also id.* at 1206–07 ("[T]he events that caused plaintiff's injuries occurred in Washington. Assuming that defendants' nonfeasance amounted to legal malpractice, plaintiff suffered injury at that time . . . . [W]hile plaintiff may have suffered damages in New York, his injury did not occur in New York."). Hence, the folk art collection cannot establish jurisdiction over Coudert under section 52-59b(a)(3), and personal jurisdiction is not authorized by Connecticut's long-arm statute.

2. *Is personal jurisdiction permitted under the Due Process Clause?*

Even were I to decide that Coudert could be subject to personal jurisdiction under Connecticut's long-arm statute, such jurisdiction would not "comport with constitutional due process principles." *See Waldman*, 835 F.3d at 327. "In many cases, the jurisdictional analysis under the . . . long-arm statute may closely resemble the analysis under the Due Process Clause of the Fourteenth Amendment." *Licci*, 673 F.3d at 61 n.11. The constitutional analysis of specific jurisdiction contains two parts. First, "the court must decide if the defendant has 'purposefully directed his activities at . . . the forum and the litigation . . . arises out of or relates to those activities.'" *Gucci Am.*, 768 F.3d at 136 (internal quotation marks and brackets omitted) (quoting *Burger King*, 471 U.S. at 472). Second, "once the court has established these minimum contacts, it 'determines whether the assertion of personal jurisdiction would comport with fair play and substantial justice.'" *Id.* (internal brackets omitted) (quoting *Burger King*, 471 U.S. at 476). Here, Statek satisfies neither part of the due process test.

a. Did Coudert "purposefully direct [its] activities at" Connecticut, and does the case "arise[] out of or relate[] to those activities"?

For a court to exercise personal jurisdiction over a defendant consistent with due process, there must be "'minimum contacts' between the defendant and the forum State." *Deiter*, 702 F.3d at 730. Due process "allows potential defendants to structure their primary conduct with some minimum assurance as to where that conduct will and will not render them liable to suit," *World-Wide Volkswagen Corp. v. Woodson*, 444 U.S. 286, 297 (1980); therefore, a defendant's "conduct and connection with the forum State [must be] such that he should reasonably anticipate being haled into court there." *Burger King*, 471 U.S. at 474. The defendant must have undertaken "some act by which [it] purposefully availed itself of the privilege of conducting activities within the forum State, thus invoking the benefits and protections of its laws."

*Goodyear*, 564 U.S. at 924 (quoting *Hanson v. Denckla*, 357 U.S. 235, 253 (1958)) (internal brackets omitted). "Connecticut courts have personal jurisdiction over a nonresident foreigner who has 'purposefully directed his activities at residents of the forum' where 'the litigation results from alleged injuries that arise out of or relate to those activities.'" *Deiter*, 702 F.3d at 730 (quoting *Burger King*, 471 U.S. at 472).

As with the "transacts any business" element of the long-arm statute, Statek has not shown that Coudert "purposefully availed itself of the privilege of conducting activities within" Connecticut. *See Goodyear*, 564 U.S. at 924. Coudert appears solely to have represented Connecticut-based clients in out-of-state proceedings. Coudert certainly had "minimum contacts" with Johnston and Spillane, but the "'minimum contacts' analysis looks to the defendant's contacts with the forum State itself, not the defendant's contacts with persons who reside there." *Walden*, 134 S. Ct. at 1122. Absent any allegations that Coudert sought to practice law in Connecticut—as opposed to practicing law elsewhere for clients who resided in Connecticut— Statek has not sufficiently alleged that Coudert "purposefully 'reach[ed] out beyond' [its] State and into" Connecticut. *See Walden*, 134 S. Ct. at 1122 (quoting *Burger King*, 471 U.S. at 479).

Statek also has not shown that its claim against Coudert "ar[o]se out of or relate[d] to" Coudert's activities in Connecticut. *See Deiter*, 702 F.3d at 730. To be sure, the claim is, in some sense, "relate[d]" to Coudert's representation of Statek, in that the documents that Coudert allegedly failed to provide were obtained in the course of that representation. *Cf. Bank Brussels Lambert*, 305 F.3d at 128 ("[W]hile these contacts may not have directly given rise to the plaintiff's cause of action, they certainly 'relate to' it."). But Statek's claimed injury in this case bears "at best, a tangential relationship" to any contacts Coudert had with Connecticut. *See Licci*, 673 F.3d at 67. Statek's Amended Complaint does not allege that Coudert committed

malpractice while representing Statek under Johnston and Spillane, but rather that Coudert impeded Statek's later efforts to remedy Johnston's and Spillane's wrongdoing. Although Coudert's "contacts with [Connecticut] are sufficient for specific personal jurisdiction . . . in *some case*," *Aggrenox*, 94 F. Supp. 3d at 257, here, the firm's "suit-related conduct"—namely, failing to mail certain documents from Coudert's London office to Statek in California—hardly "create[d] a substantial connection with the forum State." *Walden*, 134 S. Ct. at 1122.

I note that, in other cases, New York and Connecticut courts consistently have held that a client may sue a foreign law firm for malpractice only where the firm is based or where it provided legal services, not where its client resides.[13] *See, e.g.*, *Mayes v. Leipziger*, 674 F.2d 178, 178, 185 (2d Cir. 1982) ("California attorney . . . who never entered New York but who undertook in letters and telephone calls from California to New York the representation of a New York resident in litigation in California" could not be sued in New York for legal malpractice, because "[t]here was no activity in New York in which defendants sought to participate"); *Bissonnette v. Podlaski*, 138 F. Supp. 3d 616, 624–25 (S.D.N.Y. 2015) (Indiana lawyers were not susceptible to suit by New York client in New York because the lawyers never "provide[d] . . . representation in New York related to the contract" and only provided "legal services . . . from outside of New York"); *Eastboro Found. Charitable Tr.*, 950 F. Supp. 2d at 655, 658–59 (New Jersey lawyer could not be sued in New York by New York client for alleged malpractice "aris[ing] from the transfer of funds to [the lawyer's] New Jersey attorney trust account for the purchase of New Jersey property," because all of "[t]he acts and omissions alleged to constitute . . . attorney malpractice . . . took place in New Jersey"); *Durkin v. Shea*, 957 F. Supp. 1360,

---

[13] Courts vary with regard to whether they base this conclusion on the language of the long-arm statutes or on the requirements of due process.

1367–68 (S.D.N.Y. 1997) (California bankruptcy trustee who alleged malpractice by debtor's New York lawyers based "exclusively on [the attorneys'] activities in California" could sue those lawyers in New York, because the lawyers were based in New York, met with their client in New York, "initiated and received phone calls and correspondence at [the firm]'s New York office," and "generated [bills] out of the New York office"); *Twine*, 746 F. Supp. at 1203 (lawyer who resided and practice in Washington State could not be sued in New York by New York client for alleged malpractice in Washington); *Rosenblit*, 206 Conn. at 140–41 (Connecticut residents could not sue Massachusetts attorney in Connecticut for legal malpractice, because the litigation was brought in Massachusetts, "concerned . . . events that had occurred in large measure in Massachusetts," and "arose out of the plaintiffs' efforts to rehabilitate real property situated in Massachusetts"); *Walshon*, 121 Conn. App. at 374 (Connecticut resident could not sue New York law firm in Connecticut for malpractice related to an arbitration proceeding in New York, because none "of the substantive activities associated with the representation of the plaintiff or the activities giving rise to the plaintiff's claim occurr[ed] in Connecticut").

The primary exception is where the law firm itself has substantial contacts with the client's home state. For example, in *Bank Brussels Lambert v. Fiddler Gonzalez & Rodriguez*, the defendant (a Puerto Rican law firm) was sued by its former client (a Belgian bank with operations in New York) in New York for breach of fiduciary duty and breach of contract in connection with the law firm's representation of the bank in Puerto Rico. *See* 305 F.3d at 123. The Second Circuit held that there were sufficient "minimum contacts" between the law firm and New York because the firm (i) "maintained an apartment in New York," (ii) "faxed newsletters regarding Puerto Rican legal developments to numerous persons in New York," (iii) "performed work for numerous New York clients and New York law firms," and (iv) "in its marketing

materials . . . touted . . . its close relationship with the Federal Reserve Bank of New York." *Id.* at 128 (internal quotation marks omitted). Far from arising out of "a string of fortunate coincidences," the Second Circuit concluded that the bank's lawsuit was directed at "a law firm which s[ought] to be known in the New York legal market, ma[de] efforts to promote and maintain a client base there, and profit[ed] substantially therefrom." *Id.* "Under such circumstances," the Court held that there was "nothing fundamentally unfair about requiring the firm to defend itself in the New York courts when a dispute ar[ose] from its representation of a New York client—a representation which developed in a market it had deliberately cultivated and which, after all, the firm voluntarily undertook." *Id.* at 129.

*Bank Brussels Lambert* is inapposite because the Puerto Rican law firm's contacts with New York were substantially greater than Coudert's contacts with Connecticut. So far as appears from Statek's allegations, Coudert did not own property in Connecticut, did not "tout[]" any "close relationship[s]" with Connecticut entities, and did not "deliberately cultivate[]" the Connecticut legal market. *Cf. id.* at 128–29. If Coudert did "seek[] to be known in the [Connecticut] legal market, [and] make[] efforts to promote and maintain a client base there," *cf. id.* at 128, then the firm was singularly unsuccessful: Coudert "derived only minimal income from Connecticut residents," *see Ryan*, 282 Conn. at 120, who never accounted for more than 1.5 percent of the firm's revenues in the United States between 1990 and 1996, *see* Bogen Aff., Doc. No. 86-24, at 2, and who represented less than one percent of the firm's new clients between 2000 and 2005. *See* Kane Aff., Doc. No. 86-17, at 3. Relative to the firm's business worldwide, Coudert's contacts with Connecticut were so insubstantial—and so unrelated to the claims in this case—that I conclude it would "fundamentally unfair" to require the firm to defend itself against Statek's lawsuit in Connecticut. *Cf. Bank Brussels Lambert*, 305 F.3d at 129.

      b.   Would the exercise of jurisdiction over Coudert be "reasonable" and "comport[] with traditional notions of fair play and substantial justice"?

Finally, even if Statek could satisfy the standard for "minimum conducts," I would conclude that the exercise of personal jurisdiction over Coudert would not be "reasonable" under the Due Process Clause. *Deiter*, 702 F.3d at 730. "Where a plaintiff makes the threshold showing of [] minimum contacts . . . , a defendant must present 'a compelling case that the presence of some other considerations would render jurisdiction unreasonable.'" *Bank Brussels Lambert*, 305 F.3d at 129 (quoting *Robertson-Ceco Corp.*, 84 F.3d at 568). "The import of the 'reasonableness' inquiry varies inversely with the strength of the 'minimum contacts' showing—a strong (or weak) showing by the plaintiff on 'minimum contacts' reduces (or increases) the weight given to 'reasonableness.'" *Id.* (citing *Robertson-Ceco Corp.*, 84 F.3d at 568–69).

"Courts . . . consider five factors in evaluating reasonableness," *Bank Brussels Lambert*, 305 F.3d at 129, namely:

    (1) the burden on the defendant,

    (2) the interests of the forum State, . . .

    (3) the plaintiff's interest in obtaining relief, . . .

    (4) the interstate judicial system's interest in obtaining the most efficient resolution of controversies[,] and

    (5) the shared interest of the several States in furthering fundamental substantive social policies.

*Chloe v. Queen Bee of Beverly Hills*, 616 F.3d 158, 173 (2d Cir. 2010).

With respect to the first factor, the "burden on the defendant" from litigating in Connecticut may be substantial. *See id.* Not only is Coudert's "amenability to suit here . . . called into question," but also "[t]he parties, witnesses and center of the activities giving rise to [Statek's] claim[]" all are located in England. Mot. Hr'g Tr., Doc. No. 86-5, at 15. Were the case

heard here, Coudert—a firm that was dissolved more than a decade ago—would be required to defend in a jurisdiction in which it never practiced or had an office, relying on witnesses located in another country. Such an imposition "would not accord with the 'fair play and substantial justice' due process demands." *See Daimler*, 134 S. Ct. at 763 (quoting *Int'l Shoe*, 326 U.S. at 316). The first factor weighs heavily against exercising jurisdiction.

With respect to the second factor, I already concluded that "there is not any great interest on the part of Connecticut to have this case heard here, . . . neither plaintiff [nor defendant] having . . . any significant connection to the state." Mot. Hr'g Tr., Doc. No. 86-5, at 16. If anything, Connecticut has an interest in *not* occupying its courts with a fiercely contested dispute between foreign litigants. The second factor weighs moderately against exercising jurisdiction.

With respect to the third factor, Coudert concedes that "Statek is . . . interested in litigating this matter in Connecticut because"—according to Coudert—"it is time barred everywhere else." Mem. Supp., Doc. No. 86-25, at 36 n.18. Although Coudert need not identify "an alternative forum where [Statek's] claims could be brought," *Waldman*, 835 F.3d at 334, the third factor weighs moderately in favor of exercising jurisdiction.

With respect to the fourth factor, "the ease of access to evidence and the convenience of witnesses" again favors England, the "center of the activities giving rise to [Statek's] claim[]" and "a natural place for this claim to have been brought." *See Chloe*, 616 F.3d at 173; Mot. Hr'g Tr., Doc. No. 86-5, at 15. The fourth factor weighs heavily against exercising jurisdiction.

Finally, with respect to the fifth factor, England and New York have much more "significant interests . . . in having what amounts . . . to a legal malpractice case heard in the jurisdiction[s] where the lawyers alleged to have malpracticed actually center their practices." Mot. Hr'g Tr., Doc. No. 86-5, at 16–17. To the extent that penalizing malpractice amounts to a

"fundamental substantive social polic[y]," *see Chloe*, 616 F.3d at 173, that factor favors exercising personal jurisdiction over Coudert in England or New York, rather than Connecticut. The fifth factor weighs heavily against exercising jurisdiction.

Only one of the five factors—"the plaintiff's interest in obtaining relief"—indicates that exercising personal jurisdiction here would be reasonable. *See id.* The other factors all disfavor exercising jurisdiction. Therefore, even if Statek had satisfied the "minimum conducts" standard, I would conclude that the exercise of jurisdiction over Coudert would not be "reasonable" under the Due Process Clause because it would not "comport[] with 'traditional notions of fair play and substantial justice.'" *See Waldman*, 835 F.3d at 331 (quoting *Daimler*, 134 S. Ct. at 754).

## IV.     Conclusion

Coudert did not forfeit its objection to personal jurisdiction, and the exercise of jurisdiction over it is neither authorized by Connecticut's long-arm statute nor permitted by the Due Process Clause. Thus, I grant Coudert's motion to dismiss for lack of personal jurisdiction.

The Clerk shall enter judgment and close the file.


So ordered.

Dated at Bridgeport, Connecticut, this 12th day of February 2018.

/s/ STEFAN R. UNDERHILL
Stefan R. Underhill
United States District Judge
